Opinión disidente emitida por el
Juez Asociado Señor Rebollo López.
Hoy una mayoría de este Tribunal rehúsa atender la presente controversia aduciendo que no es justiciable por ser académica. Sostiene la Mayoría que la controversia no es susceptible de repetirse entre las mismas partes y que el interés involucrado no constituye un valor constitucional de la más alta jerarquía. Nada más lejos de la verdad.
En momentos donde la erogación de fondos públicos para fines ilegítimos se ha convertido en uno de los principales males que aqueja a Puerto Rico, la mayoría de este Tribunal se niega a asumir jurisdicción en el caso haciendo caso omiso de la verdadera controversia ante nuestra consideración, a saber: si los anuncios impugnados violaron el mandato constitucional consagrado en la See. 9 del Art. VI de nuestra Constitución, L.P.R.A., Tomo 1, sobre el manejo de fondos públicos; el cual, según hemos enunciado en el pasado, se encuentra saturado de intereses de orden *278 público. E.L.A. v. Cole, 164 D.P.R. 608 (2005). Elude así la Mayoría el deber constitucional de este Tribunal de velar por el manejo prudente y escrupuloso de fondos públicos, el cual sin duda alguna constituye un valor constitucional de la más alta jerarquía.
Ciertamente, el dictamen hoy emitido despierta serias inquietudes sobre los criterios realmente tomados en consideración por la Mayoría de este Tribunal al actuar así. Hace escasamente tres meses —interpretando, precisamente, los criterios de justiciabilidad— asumimos jurisdicción en Romero Barceló v. E.L.A., 169 D.P.R. 460 (2006), principalmente, por razones de alto interés público. Igual trato merece el presente caso, pues, definitivamente, el interés de proteger el buen manejo de los fondos públicos así lo amerita; más aún cuando nuestros pronunciamientos al respecto trascenderían al gobernador o a las partes en controversia y servirían de guía a todos los funcionarios de turno, quienes a diario se enfrentan a la incertidumbre de si cierta erogación de fondos públicos infringe o no el mandato constitucional en cuestión.
Evidentemente, este Tribunal posee jurisdicción para entender en el caso de epígrafe y pronunciarse sobre la controversia involucrada. Por ello, no podemos suscribir la sentencia dictada y emitimos la presente opinión disidente.
I
El 20 de marzo de 2003 el Partido Nuevo Progresista (P.N.P.) presentó una demanda y solicitud de injunction ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el Estado Libre Asociado de Puerto Rico y su entonces Gobernadora, Hon. Sila María Calderón. En la referida demanda se alegó, en síntesis, que la parte demandada, utilizando fondos públicos, transmitió múltiples anuncios en la prensa, radio y televisión en los cuales pre *279 tendía: realzar su imagen y otorgarse una ventaja indebida, influenciando la opinión pública a favor del Partido Popular Democrático (P.P.D.); adelantar los intereses de dicho partido, y desmerecer la obra realizada por la pasada administración del P.N.P. Se sostuvo, además, que dichos anuncios carecían de un fin público y que violaban la See. 9 del Art. VI de la Constitución del Estado Libre Asociado, ante, que consagra la paridad o igualdad económica entre los partidos políticos y prohíbe el uso de fondos públicos para la promoción de una postura política.
En específico, el P.N.P. alegó que la Hon. Sila M. Calderón transmitió por televisión, el 19 de marzo de 2002, un mensaje cuyo alegado propósito era defenderse de imputaciones relacionadas con un posible esquema utilizado en la campaña del P.P.D. en el 2000 para violar la Ley Electoral de Puerto Rico.
El P.N.P. también impugnó una serie de anuncios publicados en la prensa durante el 2003. Alegó que los referidos anuncios, los cuales fueron publicados en distintos periódicos de circulación en Puerto Rico, contenían los colores amarillo y rojo. Según el P.N.P, estos colores alegadamente identificaban la campaña electoral de la Hon. Sila M. Calderón para la gobernación en el 2000. Sostuvo el P.N.P., además, que en estos anuncios de prensa se utilizó también el lema “Puerto Rico hacia el Futuro por Buen Camino” con el fin de opacar los logros de la pasada administración gubernamental e influenciar la opinión pública a favor de su partido.
La parte demandante impugnó y objetó, además, la publicación de un folleto en el periódico El Nuevo Día titulado “Informe al Pueblo de Puerto Rico: A dos Años de Administración 2001-2002”, ya que éste, alegadamente, describía despectivamente la pasada administración y exaltaba la suya.
Conforme lo anterior, el P.N.P. solicitó al foro primario que emitiese una sentencia, declarando inconstitucional el *280 gasto de fondos públicos sin fin ni utilidad pública, un injunction que ordenase a la parte demandada a abstenerse de continuar utilizando fondos públicos en el diseño, la producción y la publicación de tales anuncios, y que dictase una orden al Departamento de Justicia para que procediese con el recobro y la restitución al erario de todo el dinero gastado en el diseño, la producción y la publicación de tales anuncios por parte de los funcionarios del Estado Libre Asociado (E.L.A.) que incurrieron en tal acción.
Luego de celebradas varias vistas, las partes presentaron, en corte abierta, una moción para someter un acuerdo sobre estipulación de hechos. La mencionada moción consta, además, de 51 piezas de evidencia.
Los hechos estipulados fueron dos, a saber:
1. Sila M. Calderón es candidata a reelección al puesto de Gobernadora del Estado Libre Asociado de Puerto Rico.
2. La parte demandada ha estado transmitiendo en la radio, prensa, y televisión de Puerto Rico determinados anuncios, parte de los cuales se acompañan en estas estipulaciones. Apéndice, págs. 151—152.
Entre las piezas de evidencia estipuladas se encuentran 19 anuncios distintos que fueron publicados en los periódicos El Todo, El Vocero de Puerto Rico, El Nuevo Día, Primera Hora y The San Juan Star.(1) Algunos de los referidos *281 anuncios fueron publicados en más de una ocasión. Estos anuncios informaban al pueblo los servicios, programas, horarios extendidos de distintas agencias administrativas, avisos de subasta, etc. Otros contienen, en la parte inferior, un pequeño recuadro con el fondo color amarillo y el lema “Puerto Rico hacia el Futuro por Buen Camino”, parte color negro y parte color rojo.(2) La palabra “Buen” está subrayada en color azul. Seguido del lema aparece el nombre de la Gobernadora: Sila M. Calderón, también en letras rojas, y debajo “Gobernadora Estado Libre Asociado”, en color negro. Debe señalarse que el lema impugnado aparece en casi todos los anuncios publicados, con la excepción de uno.
La parte demandada, Hon. Sila María Calderón, solicitó la desestimación sumaria del pleito. Basó su solicitud en que, aun tomando como ciertas todas las alegaciones de la demanda, ésta no sustentaba una causa de acción contra ella, ni en su capacidad personal ni en la oficial. Señaló, en apoyo de lo anterior, que los remedios solicitados por la parte demandante iban dirigidos, únicamente, al Estado Libre Asociado de Puerto Rico.
En cuanto a los anuncios estipulados, alegó que todos cumplían con un fin público, por lo cual el uso de fondos públicos para sufragarlos era legítimo. Indicó, además, *282 que, según lo resuelto en P.P.D. v. Gobernador I, 139 D.P.R. 643 (1995), el beneficio incidental para el incumbente de un mensaje gubernamental no era suficiente para anular su legitimidad ni desvirtuaba el fin público a que iba dirigido. Sostuvo, por último, que todos los anuncios respondían a la obligación del Gobierno de informar a la ciudadanía sobre las funciones que realizaban sus distintas agencias.
Posteriormente, la parte demandante presentó una petición de injunction preliminar y permanente. La petición presentada por el P.N.P. a esos efectos solicitaba al foro primario que dictara una orden que: (1) prohibiera la utilización de fondos públicos en el diseño, la producción, y la publicación del folleto “Informe al Pueblo de Puerto Rico: A dos Años de Administración 2001-2002” (“Informe al Pueblo”); (2) proscribiera el uso de todo anuncio que incluyera el lema “Puerto Rico hacia el Futuro por Buen Camino, Sila M. Calderón, Gobernadora”, y (3) prohibiera el uso de los colores rojo y amarillo en los anuncios gubernamentales donde apareciera el nombre de la Gobernadora.
A petición de la Gobernadora demandada, el tribunal de instancia consolidó las peticiones de injunction preliminar y permanente. Evaluada la prueba, el foro primario resolvió que, aun cuando la combinación de colores rojo y amarillo pudiese ser identificada con la campaña política del P.P.D. en el 2000, el uso de dichos colores en los anuncios gubernamentales en controversia no era una expresión político-partidista, por no haber sido utilizados de forma predominante.
En cuanto al lema “Puerto Rico hacia el Futuro por Buen Camino”, el tribunal de instancia determinó que tampoco era político-partidista, ya que la parte demandante había aceptado, en corte abierta, no tener evidencia para probar que había sido utilizado en alguna campaña ni surgía de la evidencia estipulada que el lema hubiese sido utilizado en la campaña política del P.P.D. en el 2000. *283 En relación con el uso de este lema determinó, además, que cualquier beneficio incidental que surgiese por su uso no desvirtuaba su fin público.
En relación con el anuncio televisado de la Gobernadora, en el cual se alegaba el uso de fondos públicos para defenderse de ciertas acusaciones, el foro de instancia determinó que tuvo un fin público, ya que promovió el interés del Gobierno en consonancia con sus deberes y funciones de velar por el cumplimiento de las leyes. Dicho foro señaló que el mensaje no pretendió realzar a un candidato o partido político; lo anterior porque, según expresó el referido foro, aun cuando la Gobernadora se defendiera de acusaciones en su contra que minen su credibilidad y honestidad, se trataba de una “respuesta oficial a éstas al anunciarse unas medidas gubernamentales para atender la situación”. Dichas medidas constituían una solicitud al Departamento de Justicia, al Contralor de Puerto Rico, al “Blue Ribbon Committee” y a la Comisión Estatal de Elecciones para que constataran que no hubo uso de fondos públicos en su campaña para la gobernación.
En cuanto al folleto “Informe al Pueblo” publicado en el periódico El Nuevo Día, sin embargo, el foro primario determinó que éste sí constituía un subterfugio para conferir una ventaja a la Gobernadora, sufragado con fondos públicos. Ello debido a que el referido folleto contenía ex-presiones que describían a la administración anterior de forma despectiva y exaltaba la presented.(3)
Por último, el foro de instancia determinó que el P.N.P. no tenía legitimación para solicitar que se emitiera una orden contra el Departamento de Justicia para que proce *284 diese con el recobro y la restitución al erario del dinero gastado en los anuncios, según P.P.D. v. Gobernador I, ante. Resolvió que, según lo resuelto en el caso antes citado, los partidos políticos no tenían legitimación activa para solicitar, como remedio, la restitución de fondos al erario porque dicha acción no tenía relación con la desigualdad económica entre los partidos políticos.
Determinó, además, dicho foro que, aun considerando la petición de injunction como un mandamus, este último recurso extraordinario tampoco procedía, ya que no existía un mandato estatutario claro que le impusiera al Secretario de Justicia la obligación de instar una acción para que se restituyeran los fondos al erario.
En vista a todo lo anteriormente expresado, el foro primario dictó sentencia en la que desestimó la demanda contra la Hon. Sila M. Calderón, tanto en su carácter personal como en su carácter oficial. De igual forma, denegó los interdictos solicitados en cuanto a la prohibición del uso de los colores rojo y amarillo, y en cuanto al uso del lema “Puerto Rico hacia el Futuro por Buen Camino”.
Por otro lado, en cuanto a la divulgación del folleto “Informe al Pueblo”, el foro de instancia emitió una orden de injunction permanente prohibiendo al E.L.A. y a sus funcionarios la publicación del folleto con fondos públicos y a destruir y reciclar toda copia existente de dicho folleto en los archivos gubernamentales, determinación que, al no ser revisada por la parte demandada, advino final y firme.
El P.N.P. apeló ante el Tribunal de Apelaciones. Alegó, en síntesis, que el foro de instancia incidió: al determinar que el mensaje televisado tuvo un fin público; al concluir que no se presentó prueba que responsabilizara a la Gobernadora, y al no prohibir al E.L.A. usar la combinación de colores rojo y amarillo en sus anuncios o publicaciones con el lema “Puerto Rico hacia el Futuro por Buen Camino”.(4) *285 Evaluada la prueba, y prácticamente por los mismos fundamentos, el foro apelativo intermedio emitió sentencia confirmatoria de la emitida por el tribunal de instancia.
Inconforme, el P.N.P. acudió, vía recurso de certiorari, ante este Tribunal imputándole al foro apelativo haber errado
... al confirmar la determinación del Tribunal de Primera Instancia de no prohibir el lema “Puerto Rico hacia el Futuro por Buen Camino” y la combinación de colores rojo y amarillo en los anuncios publicados por el Estado Libre Asociado de Puerto Rico[,]
... al confirmar la determinación del Tribunal de Primera Instancia con respecto a que el mensaje televisado de la Gobernadora del día 19 de marzo de 2002, tenía un fin público y no se transmitió en violación de las disposiciones de ley y preceptos constitucionales [y,]
... al confirmar la determinación del Tribunal de Primera Instancia de que la Hon. Sila M. Calderón no responde tanto en su carácter personal y oficial como Gobernadora, por los hechos objeto de la demanda. Petición de certiorari, pág. 7.
Por encontrarse igualmente divido, el 21 de junio de 2004 este Tribunal expidió el recurso de certiorari presentado y dictó sentencia confirmatoria de la emitida en el caso por el foro apelativo intermedio.(5) En atención a una moción de reconsideración, presentada por el P.N.P., emitimos una resolución el 11 de octubre de 2004, en la cual decidimos reconsiderar la referida sentencia.(6)
*286 II
Nos encontramos, nuevamente, ante una controversia de índole política donde se plantea la interrogante de si un partido político en el poder ha violado la See. 9 del Art. VI de la Constitución del Estado Libre Asociado, ante, al utilizar fondos públicos para pagar anuncios gubernamentales que, alegadamente, tienen contenido político-partidista dirigido a beneficiar al partido o a sus candidatos.
Sabido es que para que un tribunal pueda entrar a dilucidar una controversia, ésta tiene que ser justiciable. Uno de los supuestos en que un pleito no es justiciable es cuando éste se ha tornado académico, ya que bajo este supuesto un tribunal no tendría jurisdicción para entrar en los méritos del caso. Por ello, en primer lugar, debemos considerar si el asunto ante nos se ha tornado académico.
En su escrito, la recurrida Sila María Calderón trae a nuestra atención el cambio en la situación fáctica que tuvo ante sí el foro primario al momento de emitir su sentencia.(7) Esto es, que el 22 de mayo de 2003, ella informó al País su intención de no buscar la reelección como Gobernadora en las elecciones del 2004, y que, en efecto, no se postuló para este puesto. Señala, además, el hecho de la elección de una nueva administración para el E.L.A. a partir de este mismo año. En virtud de lo anterior, sostiene que el análisis en cuanto a que los anuncios objetados tuvieron el efecto de otorgarle ventaja sobre otro candidato en una futura contienda eleccionaria se tornó académico.
Una controversia es académica cuando ocurren cambios durante el trámite judicial, ya sean fácticos o en el derecho aplicable, que hacen que una controversia pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no pueda tener efecto real alguno en cuanto a esa *287 controversia. RBR Const., S.E. v. A.C., 149 D.P.R. 836 (1999).
El propósito de la referida doctrina es evitar el uso inadecuado de recursos judiciales y obviar precedentes innecesarios. P.N.P. v. Carrasquillo, 166 D.P.R. 70 (2005); Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 D.P.R. 924 (2000). Al analizar la academicidad de un caso, el tribunal debe evaluar los eventos anteriores, próximos y futuros para así determinar si su condición de controversia viva y presente subsiste con el transcurso del tiempo. Id.
Se han elaborado, sin embargo, una serie de excepciones a la doctrina de academicidad que permiten la consideración de un caso que de otro modo resultaría académico en cuanto a su resultado o efecto inmediato. Una de estas ex-cepciones es cuando se plantea una cuestión recurrente o susceptible de volver a ocurrir y exista la posibilidad de que ésta evada la revisión judicial. P.P.D. v. Gobernador I, ante; C.E.E. v. Depto. de Estado, 134 D.P.R. 927 (1993).
La excepción de cuestión recurrente exige que se analicen varios factores: la probabilidad de la recurrencia, la identidad de las partes(8) y la probabilidad de que la controversia evada la revisión judicial. Asoc. de Periodistas v. González, 127 D.P.R. 704 (1991). En cuanto a la probabilidad de que la controversia evada la revisión judicial hemos expresado que esto sucede cuando, por la naturaleza efímera o de corta duración de los hechos que provocan la cuestión, sea difícil que logre ser dilucidada por los tribunales. Noriega v. Hernández Colón, 135 D.P.R. 406 (1994); C.E.E. v. Depto. de Estado, ante; El Vocero v. Junta de Planificación, 121 D.P.R. 115 (1988).
En Emp. Pur. Des., Inc. v. H.I.E.Tel., ante, pág. 937, expresamos, sobre el asunto de la academicidad, que
[e]n el caso de autos, las manifestaciones específicas que die *288 ron lugar al recurso ante nos han cesado ya, por lo que podría estimarse que la controversia concreta que nos concierne aquí sobre el injunction preliminar se ha tornado académica. No obstante, es evidente que la cuestión novel e importante que este pleito presenta, de si agrupaciones como las peticionarias pueden llevar a cabo manifestaciones como las del caso de autos en un centro comercial privado, cuando sus dueños se oponen a tales actos, es una que con razonable probabilidad ha de surgir de nuevo. El acto de expresión pública impugnado puede volver a concluir antes de que la cuestión referida haya sido dilucidada judicialmente en los méritos. (Enfasis suprimido.)
En C.E.E. v. Depto. de Estado, ante, resolvimos que aun cuando ya haban culminado las actividades realizadas por el Departamento de Estado que alegadamente violaron la Ley Electoral de Puerto Rico —Ley Núm. 4 de 20 de diciembre de 1977 (16 L.P.R.A. see. 3101 et seq.)— y aunque ningún remedio judicial pudiese evitar la divulgación de los anuncios en controversia, la controversia de derecho entre las partes era susceptible de volverse a repetir. Esto es, que “con marcada frecuencia las agencias y los departamentos gubernamentales se ven en la necesidad de anunciar al país los eventos públicos que habrán de celebrar aun en años electorales y la postura de la Comisión, si no se dilucida de manera determinante, es potencialmente una fuente de continuos conflictos”. Id., págs. 936-937.(9)
Respecto a los anuncios gubernamentales, señalamos en P.P.D. v. Gobernador I, ante, pág. 677, que “por la naturaleza de la controversia de estos casos, o sea, el uso de fondos públicos para sufragar anuncios de índole políticopartidista, ésta era susceptible de repetirse, aun cuando ... el anuncio ya no se publicaba”. (Enfasis suplido.)
En el presente caso, la controversia particular de la pro *289 cedencia del injunction para prohibir el uso del rojo y amarillo y el lema antes descrito se tornó académica, ya que estamos ante un cambio de administración que, aunque regida por el P.P.D., no se le ha imputado el uso de esos colores ni del lema en cuestión. Por ello, sería improcedente conceder los remedios solicitados por el P.N.P., en cuanto a expedir un “injunction” permanente contra el E.L.A., para prohibir la publicación de anuncios que contengan los referidos colores y el lema impugnado.
Ello, no obstante, la controversia central en el presente caso no es si la Hon. Sila M. Calderón adquirió una ventaja política en las pasadas elecciones, sino si los anuncios gubernamentales impugnados, y que fueron sufragados con fondos públicos, tuvieron un fin público o un fin políticopartidista.(10) En atención a ello, el presente caso requiere que determinemos si los anuncios gubernamentales —aun cuando ya no se publiquen— violaron o no el mandato de la See. 9 del Art. VI de nuestra Constitución, supra, el cual, repetimos, al consagrar el buen manejo de los fondos públicos, constituye un valor constitucional de la más alta jerarquía.
Contrario a lo expresado por la Mayoría, entendemos que es muy probable —como en efecto puede apreciarse de nuestra pasada jurisprudencia— que en futuras ocasiones vuelva a surgir una controversia en la que se le impute al gobernador o al partido político en el poder hacer uso de fondos públicos para fines político-partidistas y que ésta evada la revisión judicial por circunstancias similares a las que ocurren en el presente caso, o sea, que ocurra un cambio de administración o que los anuncios ya no se publiquen. En vista de ello, sostenemos que es necesario que pasemos juicio sobre la presente controversia.
*290 En P.P.D. v. Gobernador I, ante, nos enfrentamos a una controversia muy similar a la del presente caso. Este Tribunal no estableció una norma que determinara qué colores, lemas, etc., pueden ser utilizados en anuncios gubernamentales,(11) sino que estableció una prohibición del uso de fondos públicos para difundir cualquiera de estas for-mas de expresar ideas que pretendan realzar la imagen del partido político en el poder —influenciando la opinión pública a su favor— que pretenda otorgarle a este partido una ventaja indebida sobre partidos opositores o que inserte lemas, colores, insignias, símbolos, etc., de corte político-partidista.
Es menester enfatizar una importante distinción entre ambos casos: en P.P.D. v. Gobernador I, ante, aplicaba la llamada “veda electoral” del Art. 8.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3351, y, por lo tanto, el análisis de los anuncios en controversia giró en torno a si éstos se estaban publicando como parte de una campaña política del partido en el poder para sacar ventaja sobre el partido opositor en las elecciones próximas. En consideración a ello fue que se concedió el injunction preliminar solicitado para prohibir al E.L.A., a sus funcionarios, agencias, etc. la publicación de dichos anuncios.
En el presente caso, como se discutirá más adelante, la referida ley no aplica, ya que los anuncios no fueron publicados en año eleccionario. El análisis de los anuncios en controversia en el caso hoy ante nuestra consideración se hace en torno a la citada See. 9 del Art. 6 de la Constitución del Estado Libre Asociado, y si los anuncios tuvieron un fin público.
Por ello, y para tratar de evitar en lo posible la recurrencia de casos de esta naturaleza, es necesario que nos expresemos sobre si los anuncios impugnados en el presente caso violaron nuestra Constitución. En otras pala *291 bras, creemos que por tratarse de una controversia susceptible de repetirse, cumple con una de las excepciones a la academicidad.
III
Como es sabido, existe un derecho del pueblo a estar bien informado. Este derecho es consustancial con el derecho al sufragio universal, consagrado en la See. 2 del Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, y del cual surge el deber del Gobierno de informar al pueblo de las gestiones realizadas en cumplimiento del mandato que éste le concedió. Esto es así porque la ciudadanía tiene derecho a ejercer su voto de forma informada y consciente, y para esto tiene que estar al tanto de las gestiones y obras realizadas por los funcionarios que eligió. Por esto, existe una relación estrecha entre el deber del Gobierno de mantener debidamente informado al pueblo y la publicación de anuncios en cumplimiento de este deber.
El Gobierno cumple con su deber de información mediante expresiones dirigidas a educar, comunicar y orientar al pueblo sobre los servicios y programas públicos, así como cualquier otra expresión que sirva para mantener al pueblo enterado de las labores que realiza en beneficio de los ciudadanos. En reconocimiento de este deber de información, este Tribunal expresó en P.P.D. v. Gobernador I, ante, que la expresión del Gobierno de naturaleza educativa e informativa es indispensable para que el pueblo pueda juzgar su labor y exigir remedios a los agravios gubernamentales.(12) “Nuestra jurisprudencia refleja la tendencia seguida en favor de la divulgación de información pública, al punto de impartirle una dimensión amplia *292 y robusta a la libertad de expresión consagrada en nuestra Carta de Derechos.” íd., pág. 680.(13)
Ahora bien, existen en nuestro ordenamiento limitaciones a este deber de información. Estas limitaciones se manifiestan tanto en la See. 9 del Art. VI de la Constitución del Estado Libre Asociado, ante, que prohíbe el desembolso de fondos públicos para fines que no sean públicos, como en la llamada "veda electoral” establecida en el Art. 8.001 de la Ley Electoral de Puerto Rico, ante, al prohibir que el partido que esté en el poder utilice durante un año eleccionario fondos públicos para promover su plataforma politica.(14)
Ambas restricciones protegen, además, el axioma constitucional de igualdad política. Véanse: Miranda v. C.E.E., 141 D.P.R. 775 (1996); P.P.D. v. Gobernador II, 136 D.P.R. 916 (1994). Conforme dicho principio, es impermisible que el partido en el poder adquiera una ventaja en el proceso político utilizando fondos públicos para difundir sus ideas, posturas o plataforma política mediante cualquier tipo de expresión pública. Esto incluye los anuncios gubernamentales.
Del antes citado Art. 8.001 de la Ley Electoral de Puerto Rico surge de forma inequívoca la intención legislativa de *293 excluir definitivamente del proceso político la influencia solapada que el partido en el poder puede tener mediante el uso de anuncios gubernamentales. P.P.D. v. Gobernador II, ante; C.E.E. v. Depto. de Estado, ante. Sin embargo, la restricción impuesta al Gobierno mediante la referida disposición estatutaria aplica, únicamente y por sus propios términos, en años electorales.
El análisis sobre la validez de la publicación de anuncios gubernamentales en años no eleccionarios, o sea, fuera del periodo de la veda electoral —como ocurre en el presente caso— dependerá de que éstos cumplan con los parámetros constitucionales de la See. 9 del Art. VI de la Constitución del Estado Libre Asociado de de Puerto Rico, ante.(15)
Dispone la referida disposición constitucional lo siguiente:
Sólo se dispondrá de las propiedades y fondos públicos para fines públicos y para el sostenimiento y funcionamiento de las instituciones del Estado, y en todo caso por autoridad de ley. Art. VT, Sec. 9, Const. E.L.A., ante, pág. 410.
Entre la citada See. 9 del Art. VI de la Constitución del Estado Libre Asociado de de Puerto Rico y el axioma de igualdad electoral en su vertiente de igualdad económica, existe una estrecha relación. De ahí que nuestro esquema electoral garantice la igualdad económica entre los partidos, restringiendo el uso de fondos públicos para fines públicos sin limitarlo al periodo eleccionario. Véase P.P.D. v. Gobernador I, ante, pág. 671.(16)
En cuanto a lo que constituye un fin público, en McCormick v. Marrero, Juez, 64 D.P.R. 260 (1944), interpretamos *294 dicho concepto como aquello que se considere en beneficio público y cuando el propósito que se pretende realizar es de carácter público. Es cierto, además, que en cuanto a lo que constituye un fin público, los foros judiciales están obligados a darle deferencia a las determinaciones legislativas sobre este concepto. íd. No obstante, en P.S.P. v. E.L.A., 107 D.P.R. 590, 599 (1978), expresamos que tal deferencia no nos priva de nuestra facultad de interpretar finalmente la Constitución, facultad que es ineludible e indelegable.
En P.I.P. v. C.E.E., 120 D.P.R. 580, 611 (1988), expresamos, además, que los tribunales, aun cuando deben actuar con prudencia y deferencia a la voluntad legislativa al revisar la determinación de lo que es fin público, ésta debe estar enmarcada dentro del sistema constitucional. “Ahora bien, esa deferencia no significa que los tribunales debemos renunciar a ejercer nuestra facultad constitucional de evaluar si determinado uso de propiedad o fondos del Estado por parte de la Legislatura y el Ejecutivo constituye un uso para un fin público. Esa deferencia tampoco puede ser llevada al absurdo de que este Tribunal se cruce de brazos para permitir un uso de fondos públicos para un fin claramente contrario a nuestro ordenamiento constitucional. Báez Galib y otros v. C.E.E. II, 152 D.P.R. 382, 396 (2000). Véase P.I.P. v. C.E.E., ante, pág. 612.
El requisito de finalidad pública es un presupuesto indispensable en todo proceso de erogación de fondos públicos que limita la capacidad de actuar del Estado. En cuanto al alcance de este concepto, en PPD. v. Gobernador I, ante, pág. 686, este Tribunal expresó lo siguiente:
El concepto de “fin público” no es estático, sino que está ligado al bienestar general y que tiene que ceñirse a las cambiantes condiciones sociales de una comunidad especfica, a los problemas peculiares que éstas crean y a las nuevas obligaciones que el ciudadano impone a sus gobernantes en una sociedad compleja. Su significado ha cobrado un marco dimensional de naturaleza liberal, generalmente prevaleciendo el criterio de *295 que los objetivos que estén contenidos en el referido fin público deben redundar en beneficio de la salud, seguridad, moral y bienestar general de todos los ciudadanos. (Enfasis suprimido.)
IV
En virtud de todo lo anteriormente expresado, no hay duda de que resulta legítimo y razonable que el Gobierno —fuera de un año eleccionario— utilice fondos públicos para comprar espacios en los medios de difusión pública con el propósito de exponer sus programas, proyectos, logros, realizaciones o planes, ya que esta acción gubernamental —en cumplimiento con su deber de información— constituye un fin público. Es por esto que resulta obvio que no toda campaña publicitaria por parte del Gobierno viola el referido mandato constitucional.
Ahora bien, debe mantenerse presente lo expresado en Marrero v. Mun. de Morovis, 115 D.P.R. 643, 645 (1984), a los efectos de que resulta negativo, al mejor desenvolvimiento de un sano proceso poltico democrático, que determinado partido político utilice fondos o recursos públicos para sus particulares fines privados. Si los anuncios gubernamentales sufragados con fondos públicos son utilizados por la administración de gobierno en el poder con fines político-partidistas, no se cumple con la exigencia constitucional. Dicho de otra forma, viola la See. 9 del Art. VI de nuestra Constitución, ante, y el axioma de igualdad electoral, el partido político que utilice fondos públicos para publicar anuncios que contengan símbolos, frases, colores, etc., de corte político-partidista. También viola estos preceptos el uso de fondos públicos para adelantar cualquier fin que tenga el propósito de darle ventaja al partido político en el poder, aun en años no eleccionarios.
La prohibición de la See. 9 del Art. VI de nuestra Constitución, ante, es tajante; no se permite el uso políticopartidista de los fondos públicos. Tampoco es permitido al *296 partido político de gobierno o a un candidato a algún puesto electivo que obtenga una ventaja económica sobre los partidos opositores a expensas del erario.
Por ello, en P.P.D. v. Gobernador I, ante, este Tribunal reconoció que no era necesaria una determinación de fin público cuando el Gobierno utilizaba o incorporaba símbolos, emblemas, colores, fotografías o lemas de obvia naturaleza político-partidista. Tampoco se le reconoce validez constitucional a cualquier expresión gubernamental difundida mediante el uso de fondos públicos cuando ésta claramente constituye un subterfugio para conferir una ventaja a un candidato o a un partido político, o para adelantar sus intereses político-partidistas. íd., pág. 691.(17)
En consecuencia, cuando nos enfrentamos a una comunicación gubernamental dirigida al pueblo —sea en año electoral o en año no electoral— que contiene obvia propaganda política, estamos impedidos de reconocerle fin público alguno. La propaganda político-partidista en un anuncio gubernamental lesiona el imperativo de igualdad electoral y la See. 9 del Art. VI de nuestra Constitución, ante.
*297 V
A. Con este trasfondo en mente, analizamos primero los anuncios de prensa impugnados y la presencia en éstos de los colores y el lema en cuestión con el fin de determinar si su uso tuvo o no un fin político-partidista. Veamos.
Es menester enfatizar que los anuncios publicados en los distintos periódicos —y que fueron detallados en la sentencia del tribunal de instancia— estuvieron destinados a promover programas, servicios y oportunidades o actividades gubernamentales. No hay duda que esto, en principio, es cónsono con los intereses del Gobierno de proveer publicidad a los servicios y programas que ofrece a beneficio de la comunidad, de mantener al pueblo informado y de estimular su participación en los programas que se ofrecen. En este sentido, los referidos anuncios, claramente, perseguían un fin público. Ahora bien, resta analizar si el uso de los colores y del lema que han sido impugnados tuvo como consecuencia la anulación de este fin público y, por consiguiente, si violaron la See. 9 del Art. VI de la Constitución, ante.
Somos conscientes que en Puerto Rico, el uso de ciertos colores —como el rojo, azul y verde— es susceptible de un argumento de asociación política. Ello no obstante, el mero uso de estos colores no hace, sin más, que el anuncio gubernamental viole nuestra Constitución. Hemos analizado cada uno de los anuncios que constan en el expediente y hemos observado, al igual que el foro de instancia y el tribunal apelativo intermedio, que los colores utilizados en los anuncios no fueron de uso predominante. Como relatáramos anteriormente, sólo unos cuantos de los referidos anuncios contienen, en la parte inferior, un pequeño recuadro con el fondo color amarillo y palabras escritas en rojo.
En fin, la utilización de los colores rojo y amarillo —por sí solos y utilizados de forma no generalizada— no nos im *298 pide encontrar un fin público en dicha comunicación gubernamental. Lo importante es que no se trate de un continuo despliegue de estos colores en cada uno de los anuncios de las distintas agencias administrativas.

Sin embargo, no podemos limitarnos a analizar, por separado, la presencia de los colores en los anuncios de prensa en controversia. Hay que considerarlos en conjunto con el lema “Puerto Rico hacia el Futuro por Buen Camino”, que también está presente en los anuncios. 

(18)

B. La correcta solución de la controversia planteada en el presente caso exige no sólo un análisis —detenido, objetivo y juicioso— de los hechos específicos del caso, sino el establecimiento de unas premisas básicas, las cuales re-sultan determinantes en la consecución de esa solución.
La publicación de expresiones gubernamentales mediante el uso de fondos públicos para la consecución de un fin público puede, en algunas ocasiones, tener el efecto incidental de producir cierto grado de ventaja al partido po *299 lítico en el poder o a un candidato de dicho partido, lo cual es, hasta cierto punto, inevitable y legítimo. Pero cuando, por el contrario, dicha expresión es utilizada como un vehículo para adelantar cualquier fin individual de dicho partido o candidato, anulando de tal forma la consecución de un objetivo legítimo, tal expresión no puede prevalecer porque constituiría una ventaja económica a dicho partido o candidato por sobre los partidos políticos o los candidatos de oposición. P.P.D. v. Gobernador I, ante.
Por otro lado, reconocemos que no corresponde a este Tribunal diseñar el modo en que se publicarán los anuncios gubernamentales ni establecer una norma que preceptúe qué colores puede utilizar un partido político en el poder al divulgar anuncios gubernamentales ni qué frases específicas puede utilizar al realizar su labor de informar al pueblo. Pero es labor ineludible de este Tribunal determinar si un partido político viola o no la referida See. 9 del Art. VI de nuestra Constitución al enfrascarse en una campaña publicitaria de esa naturaleza.(19)
Dicho de otra manera, “[no] nos corresponde pasar juicio sobre la sabiduría de los gastos incurridos en publicidad, siempre que éstos respondan a fines públicos. Sin embargo, es nuestra responsabilidad, como máximos intérpretes de la Constitución, velar por que estos fondos respondan directamente a las necesidades de la ciudadanía y no a los fines de partido o candidato político alguno”. (Enfasis nuestro.) P.P.D. v. Gobernador I, ante, pág. 703.
C. Si bien la mayoría de los anuncios publicados e impugnados en el presente caso tenían el propósito aparente de informar y educar al pueblo sobre programas de gobierno, oportunidades de empleo, horarios extendidos de *300 las diferentes agencias de gobierno, charlas sobre temas particulares, subastas y hasta destaque de logros alcanzados —por lo cual se puede decir que perseguían un fin legítimo— la inserción constante y continua del lema impugnado —esto es, “Puerto Rico hacia el Futuro por Buen Camino”— en conjunto con los colores rojo y amarillo,(20) nos lleva a la conclusión de que tenían, obviamente, un fin político-partidista, el cual anula el aparente fin legítimo de informar y educar al pueblo. Ello es así por dos razones, a saber: en primer lugar, la conclusión de que un lema responde a fines político-partidista no depende, necesariamente, de que dicho lema haya sido utilizado anteriormente como parte de una campaña política por el funcionario en el poder que lo utiliza. En segundo lugar, porque el lema no se utilizó como parte de una campaña de determinada agencia para adelantar su política pública o lograr un fin específico, de forma que el lema respondiera al interés particular de esa agencia de motivar al ciudadano, crear consciencia sobre problemas sociales, alertar a la ciudadanía sobre algún asunto, fomentar su cooperación con los programas o proyectos implantados, entre otros.(21)
Aunque en el presente caso el lema impugnado no había sido utilizado en la campaña eleccionaria en la cual resultó electa la Hon. Sila María Calderón, el uso, continuo y constante, en todos los anuncios de la mayoría de las agencias del Gobierno de Puerto Rico —irrespectivamente de la clase de anuncio que fuera y su propósito— convirtieron dicho lema en un político-partidista. Resulta claro, en consecuencia, que los anuncios impugnados tuvieron el propósito primordial de realzar, favorecer y diferenciar la administración de gobierno de la Gobernadora Calderón, una “en buen *301 camino”, de la anterior administración, que había sido una, alegadamente, de “mal camino”.
No debemos olvidar nunca que la Constitución del Estado Libre Asociado de Puerto Rico prohíbe todo tipo de desembolsos para fines no públicos. Ninguna administración, sea cual fuese, puede utilizar fondos públicos en pago de anuncios que constituyen un subterfugio para esconder fines político-partidistas.
En consecuencia, resolveríamos que, tanto el tribunal de instancia como el foro apelativo, erraron al resolver que los anuncios impugnados no eran violatorios de la See. 9 del Art. VI de nuestra Constitución, ante.
VI
El segundo señalamiento de error se circunscribe a determinar si erró el foro apelativo al resolver que el mensaje televisado de la Gobernadora del 19 de marzo de 2002 tenía un fin público y no violó las leyes o los preceptos constitucionales.(22) Al hacer este análisis, nos remitimos a la discusión anterior y a los principios expuestos para analizar la legalidad de la expresión gubernamental.
El referido foro expresó en su sentencia que la utilización de fondos públicos para costear el anuncio era válida debido a que la prueba presentada por el P.N.P. no demostró que la Gobernadora hubiera utilizado en su mensaje televisado lemas o símbolos asociados al P.P.D.(23)
Concluyó dicho foro, además, que el mensaje de la Gobernadora promovía mi fin público, ya que el fin ulterior de las manifestaciones en el anuncio fue mantener la confianza del pueblo y la credibilidad en su gobernante en lo referente a sus actuaciones como administrador y custodio *302 del erario. Lo anterior, porque la Gobernadora se defendía de una serie de ataques hechos por miembros del P.N.P. en los cuales se le imputaba haber utilizado fondos públicos, mientras fungía como Alcaldesa del Municipio de San Juan, para su campaña a la gobernación en las elecciones del 2000.
Sobre el particular, los peticionarios sostienen que la Hon. Sila M. Calderón no podía utilizar fondos públicos para defender su imagen y que, por ello, el mensaje televisado no tuvo fin público alguno.
Hemos evaluado el texto íntegro del anuncio televisado. La esencia del anuncio son explicaciones que la Hon. Sila M. Calderón brindó al Pueblo de Puerto Rico sobre las imputaciones hechas en su contra. (24) El valor informativo fue *303 mayor que cualquier beneficio incidental que la Gobernadora pudo derivar y, por consiguiente, tenía un fin público.
Ya anteriormente expresamos que el derecho del pueblo a estar bien informado se logra permitiendo que la administración de gobierno informe al pueblo sobre las medidas que ha tomado o que se propone tomar para lidiar con los asuntos que interesan y aquejan a la ciudadanía, en este caso, la corrupción gubernamental.
En el caso del anuncio televisado, la Gobernadora anunció que se solicitarían investigaciones al Departamento de Justicia, al Contralor de Puerto Rico, al Blue Ribbon Committee y a la Comisión Estatal de Elecciones para que éstos constataran que no hubo uso de fondos públicos en su campaña para la gobernación; además, fue perfectamente legítimo que la Gobernadora, como primera ejecutiva del Estado, administradora y custodia del erario, utilizara fondos públicos con el fin de transmitir una reacción oficial a las imputaciones que pudieron haber socavado la confianza que el pueblo depositó en ella. Creemos que la Hon. Sila M. Calderón no actuó con el fin de adelantar propósitos políticos o ideología partidista de tipo alguno.
Por consiguiente, resolveríamos que el anuncio televisado no violó las disposiciones de la See. 9 del Art. VI de la Const, del E.L.A., ante.
VII
El tercer señalamiento de error requiere que analicemos si fue correcta la determinación del foro apelativo intermedio de confirmar la desestimación de la demanda contra la Gobernadora tanto en su carácter personal como oficial. El asunto no requiere una extensa discusión. Tanto el foro primario como el foro apelativo determinaron que el remedio solicitado por el P.N.P. en el presente caso no creaba una causa de acción contra la Gobernadora, en ningún carácter, y que, por el contrario, la causa de acción era contra el *304 E.L.A. Ni de la demanda ni de la evidencia estipulada por los peticionarios surge una causa de acción contra la Hon. Sila M. Calderón. Por consiguiente, concluiríamos que no erraron ni el foro primario ni el foro apelativo al hacer esta determinación.
Además, el remedio que los peticionarios solicitan contra la Hon. Sila M. Calderón es que se le condene a restituir los fondos erogados. El P.N.P. no tiene legitimación activa para reclamar la restitución de los fondos al erario. Véase P.P.D. v. Gobernador I, ante.(25)
VIII
Por los fundamentos antes expuestos, revocaríamos parcialmente la sentencia dictada por el foro apelativo intermedio, decretando la inconstitucionalidad de los anuncios de prensa publicados por la pasada Administración de la Hon. Sila M. Calderón que incluyeron el lema “Puerto Rico hacia el Futuro por Buen Camino”, en conjunto con los colores rojo y amarillo, por ser el uso de éstos de corte político-partidista y, en consecuencia, violatoria de la referida See. 9 del Art. VI de la Constitución del Estado Libre Asociado de Puerto Rico. Confirmaríamos la referida sentencia en cuanto a los demás asuntos; esto es, en cuanto a la validez del anuncio televisado y en cuanto a la desestimación de la demanda instada contra la Hon. Sila M. Calderón tanto en su carácter oficial como personal.

 Según las determinaciones de hechos del tribunal de instancia, los 19 anuncios en que se utilizaron los colores rojo y amarillo, y el lema “Puerto Rico hacia el Futuro por Buen Camino”, son los siguientes: (1) anuncio del Departamento del Trabajo y Recursos Humanos para informar adiestramientos para personas desempleadas; (2) anuncio del Departamento de Agricultura para proveer información sobre los beneficios para el agricultor por recolectar el café maduro; (3) anuncio del Departamento del Trabajo y Recursos Humanos y del Consejo de Desarrollo Oeupacional para proveer información al trabajador desplazado sobre los servicios ofrecidos por la agencia; (4) invitación a una subasta de la Oficina Estatal de la Conservación Histórica; (5) invitación a un seminario de Promo-Export y Hong Kong Trade; (6) anuncios para participar en subastas del Departamento de Transportación y Obras Públicas; (7) anuncio publicado por el Departamento de la Familia sobre cómo proteger a los niños y sobre los servicios ofrecidos; (8) comunicado de prensa de la Administración de Desarrollo Socioeconómico del Departamento de la Familia para informar que no recibiría nuevas propuestas de agencias gubernamentales o entidades privadas; (9) anuncios de varias agencias sobre el horario extendido de sus servicios; (10) anuncio sobre el tema que la Gobernadora discutiría el 15 de marzo de *281 2003 en distintas radioemisoras del país (éste no contiene el lema); (11) anuncio de la Junta de Planificación para invitar a la ciudadanía a participar en cinco foros; (12) anuncio de la Administración del Derecho al Trabajo y del Departamento de Educación para invitar a los jóvenes que participaron en el programa de Navidad a la entrega de cheques y otras actividades; (13) anuncio de la Oficina de Asuntos de la Juventud para informar sobre oportunidades de viaje estudiantiles; (14) anuncio del Departamento de Agricultura para invitar a los interesados a una charla con el Secretario de dicho departamento; (15) anuncio de la Oficina de Asuntos de la Juventud para informar a los jóvenes sobre oportunidades de empleo; (16) anuncio del Departamento de Salud y Junta Examinadora de Quiroprácticos para informar a los interesados dónde obtener solicitudes para el examen de reválida; (17) invitación a la celebración de una subasta del Departamento de Salud; (18) anuncio del Departamento de Salud para notificar a las compañías productoras de alimentos que el Programa WIC acepta solicitudes con cotizaciones para autorizar el servicio de alimentos a sus participantes; (19) anuncio sobre los Códigos de Orden Público para promover que la ciudadanía solicite a sus alcaldes que los adopten.

 Otros anuncios, en específico, los anuncios de la AAEET, contienen variaciones de los colores rojo y amarillo.

 La parte demandada levantó la defensa de academicidad en cuanto a la solicitud para que se declarase inconstitucional el uso de fondos públicos para pagar el folleto “Informe al Pueblo de Puerto Rico: A dos Años de Administración 2001-2002” (“Informe al Pueblo”) y el mensaje televisado de la Gobernadora del 10 de marzo de 2002. En cuanto a esto, el foro primario resolvió que el caso ante sí era una excepción a la doctrina de academicidad por presentar una cuestión susceptible de volver a ocurrir.

 La denegatoria del injunction para que se ordenase a la entonces Secretaria de Justicia recobrar los fondos públicos utilizados en la publicación de los anuncios *285 en controversia no fue impugnada por la parte demandante, por lo que este aspecto también advino final y firme, y constituye la ley del caso.

 La entonces Jueza Presidenta Señora Naveira Merly, el entonces Juez Asociado Señor Hernández Denton y el Juez Asociado Señor Fuster Berlingeri hubieran denegado la expedición del recurso por haberse tornado académico. Por otra parte, el Juez Asociado Señor Rebollo López, el entonces Juez Asociado Señor Corrada Del Río y el Juez Asociado Señor Rivera Pérez hubieran expedido el recurso.

 Todos los Jueces que intervinieron en la referida reconsideración estuvieron de acuerdo con dicho curso de acción, excepto las Juezas Asociadas Señoras Fiol Matta y Rodríguez Rodríguez, quienes se inhibieron.

 Dicha sentencia fue emitida el 9 de abril de 2003.

 En Com. de la Mujer v. Srio. de Justicia, 109 D.P.R. 715 (1980), expresamos que para que opere esta excepción, la recurrencia no tiene que ser específicamente entre las mismas partes.

 En este caso la controversia era si la Ley Electoral de Puerto Rico disponía que en un año eleccionario las agencias gubernamentales del Estado Libre Asociado (E.L.A.) estaban obligadas a someter a la Comisión Estatal de Elecciones todos los anuncios que éstas deseaban publicar.

 Es procedente enfatizar sobre este aspecto que, entre los remedios solicitados ante el Tribunal de Primera Instancia se encuentra el de dictar una sentencia que declarase inconstitucional el uso de fondos públicos para costear los anuncios impugnados.

 Reconocemos que así hacerlo constituiría una intromisión indebida de la Rama Judicial en las funciones de la Asamblea Legislativa.

 Es menester enfatizar que en P.P.D. v. Gobernador II, 136 D.P.R. 916 (1994), este Tribunal señaló que el derecho constitucional a la libre expresión le asiste a los individuos frente al Estado. “De ahí que el Gobierno no tiene un derecho constitucional a la libre expresión protegido.” Id., pág. 923.

 Citando a Noriega v. Gobernador, 130 D.P.R. 919 (1992); Noriega v. Gobernador, 122 D.P.R. 650 (1988); López Vives v. Policía de P.R., 118 D.P.R. 219 (1987); Soto v. Srio. de Justicia, 112 D.P.R. 477, 485 (1982); Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1960), y a Sierra v. Tribunal Superior, 81 D.P.R. 554 (1959).

 El citado artículo dispone que:
“Se prohíbe a las agencias del Gobierno de Puerto Rico, la Asamblea Legislativa de Puerto Rico y a la Rama Judicial, que a partir del 1ro. de enero del año en que deba celebrarse una elección general y hasta el día siguiente a la fecha de celebración de la misma, incurran en gastos para la compra de tiempo y espacio en los medios de difusión pública con el propósito de exponer sus programas, proyectos, logros, realizaciones, proyecciones o planes. Se exceptúan de esta disposición aquellos avisos y anuncios de prensa expresamente requeridos por ley.
“Asimismo, se exceptúan de la anterior disposición aquellos anuncios que sean utilizados para difundir información de interés público, urgencia o emergencia, los cuales sólo serán permitidos previa autorización al efecto de la Comisión Estatal de Elecciones.” 16 L.P.R.A. see. 3351.

 Queda claro, entonces, que ya que los anuncios impugnados fueron publicados fuera de la veda electoral, no corresponde analizar si violaron las disposiciones del Art. 8.001 de la Ley Electoral de Puerto Rico, 16 L.P.R.A. sec. 3351.

 También expresamos en el referido caso que la See. 9 del Art. VI de nuestra Constitución, L.P.R.A., Tomo 1, “no requiere una ley específica para su aplicación”. P.P.D. v. Gobernador I, 139 D.P.R. 643, 692 (1995).

 En este caso, además, este Foro determinó que se considerará que la expresión gubernamental contendrá un fin público siempre y cuando cumpla con ciertos criterios. Estos son:
“1. Redunda en beneficio de la salud, la seguridad, la moral y el bienestar general de todos los ciudadanos.
“2. Está destinado a una actividad de carácter público o semipúblico.
“3. Promueve los intereses y objetivos de la entidad gubernamental, en consonancia con sus deberes y funciones o la política pública establecida.
“4. Promueve programas, servicios, oportunidades y derechos, o adelanta causas sociales, cívicas, culturales, económicas o deportivas.
“5. Promueve el establecimiento, modificación o cambio de una política gubernamental.” P.P.D. v. Gobernador I, ante, pág. 691.
Una vez se determina que existe un fin público en relación con la erogación de fondos por una entidad gubernamental, el hecho de que surja un beneficio incidental en favor de personas particulares no desvirtúa el fin público a que va dirigida la actividad gubernamental. íd., pág. 688.

 En P.P.D. v. Gobernador I, ante, se impugnó el lema de “compromiso cumplido” que aparecía en algunos de los anuncios gubernamentales publicados por las agencias administrativas. Sobre este particular, el Partido Popular Democrático (P.P.D.) presentó en ese caso prueba pericial que demostró que el referido lema era utilizado en la campaña política a la gobernación del Hon. Pedro Rosselló para el año siguiente y, simultáneamente, en los anuncios de las distintas agencias gubernamentales. En este caso se expresó que “[a] pesar de que resulta evidente que la utilización de este lema responde a fines político-partidistas, la prueba pericial despejó todo tipo de duda al demostrar fehacientemente que el lema en cuestión corresponde a la campaña que simultáneamente conduce el P.N.P. en consideración a las elecciones generales de 1996”. (Énfasis suplido.) íd., pág. 700.
Este Tribunal resolvió, en el antes citado caso, que el uso de la frase en los anuncios en controversia respondió a una campaña publicitaria concertada, de manifiesto corte político-partidista, sufragada con fondos públicos y que, por lo tanto, violaba la disposición constitucional de la referida See. 9 del Art. VI de nuestra Constitución y el axioma de paridad entre los partidos políticos.
En este caso también fueron impugnados los anuncios sobre las tarjetas de salud. En cuanto a éstas, este Tribunal determinó que los anuncios tenían el fin de contrastar la cantidad de tarjetas repartidas por la presente Administración con el hecho de que el candidato opositor no había repartido tarjeta alguna. Por ello, determinó que el anuncio adelantaba un fin político-partidista. Además, se impugnó un folleto publicado en el Municipio de Carolina, que llevaba el título “Una Década de Superación” junto a un listado de expresiones que describían despectivamente a la anterior administración perteneciente al P.N.P. Este Tribunal también resolvió en cuanto a éstas que perseguían un fin político-partidista por resaltar la administración del alcalde en poder.

 A esos fines, debe mantenerse presente lo expresado en el caso P.P.D. v. Gobernador I, ante, pág. 703, a los efectos de que “[n]inguna de las ramas del Gobierno puede, bajo el subterfugio de la inaplicabilidad de la veda electoral, utilizar fondos públicos para fines político-partidistas, ya que ello no constituye un fin público en nuestra jurisdicción”.

 No podemos ignorar que el color rojo siempre ha distinguido la campaña política del Partido Popular Democrático y el color amarillo había sido utilizado, en campañas políticas previas, por la Hon. Sila María Calderón.

 Ejemplo de ello sería que los anuncios del Departamento de la Familia informaran sobre algún programa en respuesta a su lucha contra el maltrato infantil e incluyera en los respectivos anuncios el lema “Puerto Rico necesita niños felices”.

 El texto íntegro del referido anuncio consta transcrito en la sentencia del Tribunal de Primera Instancia.

 gn su escrito, los peticionarios reconocen, en cuanto al mensaje televisado de la Gobernadora, que no incorpora lemas políticos o material fácilmente identificable con un partido político.

 A continuación, algunas de la expresiones hechas por la Gobernadora en el anuncio televisado del 19 de marzo de 2002:
“Esta noche quiero hablarte de un tema muy importante para ti, para mí y para todo Puerto Rico. Se trata de la integridad pública, de la honestidad en el manejo de los asuntos de Gobierno.
“En los últimos días se han hecho y se han publicado expresiones, alegaciones, y acusaciones contra mi campaña a la gobernación. Esto quizás ha creado desorientación en ti y en el pueblo puertorriqueño. De hecho, pienso que el propósito ha sido generar confusión y dudas sobre mi credibilidad, para en alguna forma descarrilar los esfuerzos que llevo para eliminar la corrupción de Puerto Rico.
“Todo esto es muy serio. Por eso, esta noche me estoy dirigiendo a ti. Para darte una explicación de lo más clara posible, sobre estos temas; para asumir la responsabilidad que me corresponde; y para hablarte de frente. Para hablarte con la verdad, como yo la entiendo, y como siempre he dicho que te voy a hablar.
“Los señalamientos que se han hecho son de dos naturalezas. El primero tiene que ver con anuncios que auspiciaron otros candidatos para apoyar el mensaje integrado de cambio. El segundo tiene que ver con conjeturas y especulaciones, de fuentes anónimas y políticas, que han inferido que se usaron fondos municipales en mi campaña.
‘Yo te puedo asegurar que ambos señalamientos son total y absolutamente falsos.
“Me siento segura de lo que estoy diciendo, aún así le he pedido al Departamento de Justicia, al Contralor de Puerto Rico y al Blue Ribbon Committee, que constaten que no hubo uso alguno de fondos públicos en mi campaña.
“Sin embargo, para que sobre este tema tampoco quede duda alguna, le he solicitado una auditoría completa a la Comisión Estatal de Elecciones. Le he hecho una asignación especial de fondos para ese propósito y les he pedido que se atienda este asunto con la mayor rapidez.” Apéndice, págs. 238-239.

 En P.P.D. v. Gobernador I, ante, también se desestimó la causa de acción del remedio de restitución al erario y, como consecuencia, se desestimó la demanda contra el Hon. Pedro Rosselló, porque el P.P.D. no tenía legitimación activa para hacer este reclamo. En dicho caso se le reconoció legitimación activa a los partidos políticos para instar una acción, únicamente, en protección de la igualdad electoral en su vertiente de igualdad económica.